UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MATHIS,<br><br>                Petitioner,<br><br>vs.<br><br>L.E. SCRIBNER, et al.,<br><br>                Respondents. | NO. CV S-06-2733-JLQ<br><br>**MEMORANDUM OPINION and ORDER RE:   PETITION FOR WRIT OF HABEAS CORPUS** |

**Before the Court** is Robert Mathis' (Mathis or Petitioner) Second Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Ct. Rec. 14), to which the Respondents have answered (Ct. Rec. 19).  Mr. Mathis has filed a reply (Ct. Rec. 21). Mathis' grounds for relief are organized as follows: (1) the state court misapplied California law, (2) the trial judge was biased, (3) the state court committed a *Marsden* violation, (4) Petitioner had ineffective assistance of trial and appellate counsel, (5) the jury instructions were erroneous and vague, and (6) a sentence of twenty-five years to life amounts to cruel and unusual punishment.  Respondents argue that (1) the writ should be denied on the merits and (2) the jury instructions argument is not a cognizable claim, but could also be denied on the merits.

     While the court is prepared to deny the Petitioner's Petition For Writ of Habeas Corpus in accordance with this Memorandum Opinion, before the entry of a final judgment the court will give the Petitioner the opportunity, in accordance with the new Rule 11 of the Rules Governing § 2254 & 2255 proceedings,  to make a substantial showing of the denial of a constitutional right for purposes of appeal.  See 28 U.S.C. § 2253 (c)(2).

MEMORANDUM OPINION - 1

# I. BACKGROUND

## A. Facts

In the evening of April 8, 2003, Mr. Mathis entered a clothing store within a shopping complex in El Dorado County, California. Mathis was accompanied by another man by the name of Dan Dillon. Mathis picked up a woman's silver accordion style concha belt priced at $219.99 and began throwing it in the air. When Mathis walked behind one of the displays, the belt disappeared from observation of his hands. He then headed toward the exit. The store clerk confronted Mathis who denied having the belt though it was visibly in his front pocket. When the clerk stated that she could see the belt in Petitioner's pocket, he removed it, asked for her name and repeatedly threatened her, stating "It's okay. I will be back. You'll see me again." The clerk then called the police. Officers responding to the clerk's call found Mathis and Dillon in a nearby store where Mathis admitted that he had wanted the belt, intended to take it and still wanted it. Mathis was subsequently arrested and booked. Dillon was not arrested. During booking it was discovered that Mathis did not have money with which to purchase the belt as he had only change in his wallet and no bills, checks or credit cards.

## B. Procedural History

Mathis was charged with attempted petty theft, petty theft, and commercial burglary. Under California law petty theft with a prior conviction is a so-called "wobbler" offense because it is punishable either as a misdemeanor or as a felony. *Ewing v. California*, 538 U.S. 11, 16-17(2003). The decision to prosecute petty theft with a prior conviction as a misdemeanor or as a felony is in the discretion of the prosecutor. *Id.* at 17. The trial court also has discretion to reduce the charge to a misdemeanor at the time of sentencing. *Id.* Mathis was prosecuted on a felony petty theft charge. The charge of attempted petty theft was dismissed. Mathis was convicted by a jury of petty theft and acquitted of burglary. For sentencing purposes it was alleged that Mathis had previously

MEMORANDUM OPINION - 2

been convicted of four "strike" offenses (two robberies, a rape and a burglary) and had served a prior theft-related prison term. After Mathis waived a jury trial on the sentencing allegations, the prior convictions were found to be established at a bench trial. The trial court did not reduce the petty theft felony to a misdemeanor. On May 20, 2004, the court sentenced Mathis to state prison for a term of twenty-five years to life.

Mathis appealed and the California Court of Appeals affirmed the judgment on August 17, 2005 (Ct. Rec. 14-2, p. 24). The California Supreme Court denied review (Ct. Rec. 14, p. 2). Subsequently, Petitioner unsuccessfully filed habeas petitions in state courts: the Superior Court (December 2006), Court of Appeals (January 2007), and Supreme Court of California (July 2007) (Ct. Rec. 14, p. 9-12). Mr. Mathis' Second Amended Writ of Habeas Corpus was filed in the United States District Court for the Eastern District of California on October 26, 2007. The parties agree that it is timely.

## II. DISCUSSION

**A. Standard of Review**

Mr. Mathis' petition is reviewed under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as his federal petition was filed in 2007. *Woodford v. Garceau*, 538 U.S. 202, 210 (2003)(holding that AEDPA applies to applications filed in the federal courts after April 24, 1996). "We . . . review the state court's determinations through a 'highly deferential' lens." *Matylinksy v. Budge*, 577 F.3d 1083, 1090 (9th Cir. 2009).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

MEMORANDUM OPINION - 3

A decision is "contrary to" clearly established federal law in two circumstances. First, when "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Second, a state court decision is "contrary to" clearly established federal law when the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than the [Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 412-413. A state court unreasonably applies clearly established federal law when it applies the law in a manner that is "objectively unreasonable." *Id*. at 409. "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) - whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer v. Andrade,* 538 U.S. 63,  71 (2003).

In examining whether state courts reached a decision that was contrary to federal law or whether the state courts unreasonably applied such law, the court should look to the last reasoned state court decision reviewing the conviction and sentence. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

**B. Petitioner's State Law Sentencing Theories (Ground One and Six[1])**

Mr. Mathis claims that his conviction of theft was a misapplication of state sentencing law. Specifically, he argues that his actions were at most attempted theft and therefore not a strikeable offense, that the arresting officer's classification of the crime as an *attempted* petty theft is controlling, and that it is relevant that he gave the belt back to the clerk when stopped rather than leaving the store with it.

---

[1] Due to the somewhat disorganized and repetitive grounds presented by Mr. Mathis, this Court is following the reorganization of arguments from Respondents' answer.

MEMORANDUM OPINION - 4

Respondents respond that under California law, petty theft can be a felony when a defendant has previously served a prior theft-related prison term (Cal. Penal Code § 666 (West Supp. 2009). It is undisputed Mathis had served such a term. Furthermore, California's Three Strikes Law, which provides for a term of twenty-five years to life for felonies, applies to such a petty-theft-turned-felony. *Lockyer v. Andrade,* 538 U.S. 63, 68 (2003). Additionally, Respondents argue that claims regarding the correctness of applications of state law are not cognizable on federal habeas claims. 28 U.S.C. §2254(d)(1).

Because Petitioner's sentencing claims are a question of state law, his claim is not cognizable before this court. Furthermore, Petitioner's claim closely mirrors past claims that have been rejected by the United States Supreme Court. *See Lockyer v. Andrade*, 538 U.S. 63, 67 (2003) (discussing application of Cal. Penal Code § 666 to similar facts). Accordingly, Petitioner's state law sentencing claims should be **DENIED**.

**C. Judicial Bias (Ground 3)**

Mr. Mathis, in his third ground for relief, claims the trial judge was biased. As evidence of bias, Mathis points to alleged procedural and evidentiary errors, in addition to the court acting as a "de facto prosecutor" (including allegedly leading witnesses). During state habeas review, the California Superior Court found that, "there is no indication that the trial court was prejudiced or acted as a 'tag-team' with the prosecution, as asserted in the petition" (Ct. Rec. 14, p. 10). Mathis fails to show that the rejection of this argument was objectively unreasonable in light of the evidence presented or Supreme Court precedent. In fact, in reviewing the transcript the trial judge appears to have been very patient with and respectful to Mr. Mathis, repeatedly responding to Mr. Mathis' concerns (*see* trial judge's explanation why arresting charge does not control what a defendant may ultimately be charged with, Ct. Rec. 14-4 p. 51). As the Respondents

accurately point out, Mr. Mathis' claims of judicial bias are insufficient to meet the de novo standard of review:

> To succeed on a judicial bias claim, the petitioner must overcome a presumption of honesty and integrity in those serving as adjudicators. In the absence of any evidence of some extrajudicial source of bias or partiality, neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are critical or disapproving of, or even hostile to, counsel, the parties, or their cases.

*Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008)(internal citations omitted). Accordingly, Petitioner's judicial bias claim should be **DENIED**.

**D. *Marsden* Violation (Ground 7)**

Petitioner argues that the trial court violated his Sixth Amendment right by failing to inquire into Petitioner's post-conviction request for substitute counsel (called a *Marsden* motion from *People v. Marsden*, 2 Cal. 3d 118 (1970)). "[A] judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney." *Id*. at 124. Instances of misconduct may be related via a written motion or by a hearing.

The Petitioner filed a written motion objecting to his attorney's performance. The trial court convened a hearing to further explore counsel's performance prior to the bench trial on Petitioner's prior convictions. The Court of Appeals for the State of California theorized this was because though Petitioner expressed his concern about counsel's preparation for the upcoming trial, none of the reasons in the Petitioner's motion itself related directly to this performance, rather only to counsel's past performance. At the hearing, the court inquired into what counsel was doing to prepare for the trial on the prior convictions and then asked Petitioner what else concerned him. Petitioner merely restated the reasons he included in his written motion. Accordingly, the trial court dismissed the motion.

MEMORANDUM OPINION - 6

The Court of Appeals found that Petitioner "was afforded an adequate opportunity to apprise the court of the reasons for his dissatisfaction with appointed counsel" (Ct. Rec. 14-2 p. 32). The California Supreme Court left this ruling undisturbed. To the extent that Petitioner is challenging the application of the trial court's *Marsden* motion under state law, it is beyond the scope of review of this court. 28 U.S.C. § 2254(a). *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (stating "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Further, the Court of Appeal's rejection of Petitioners claim is objectively reasonable. Accordingly, Petitioner's *Marsden* violation claim should be **DENIED**.

**E. Ineffective Assistance of Trial and Appellate Counsel (Grounds 5, 7 and 2)**

On a similar ground, Petitioner argues that his Sixth Amendment rights were violated by ineffective assistance of counsel. A federal habeas court does not review *de novo* a claim of ineffective assistance of counsel arising from state proceedings. "Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). In Petitioner's state habeas action, the Superior Court found that *Strickland* was properly applied:

> The standard for ineffective assistance of counsel requires petitioner to demonstrate, not merely assert, that (1) counsel's actions were objectively unreasonable and (2) petitioner was prejudiced, that is, he must "show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" [*Smith v. Robbins* (2000) 528 U.S. 259, 120 S.Ct. 746*; Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052]. Petitioner has failed to demonstrate that the actions of either his trial or appellate counsel were objectively unreasonable. Whether he personally agrees with counsel's tactics is not relevant. [*People v. Farnam* (2002) 28 Cal.4th 107].

Ct. Rec. 14, p. 10.

MEMORANDUM OPINION - 7

Petitioner's ineffective assistance of trial counsel claims are enumerated as follows.

Petitioner asserts that trial counsel should not have allowed him to be charged with three felonies when he was arrested for attempted theft (Ct. Rec. 14, p. 74). However, the trial court found that it was proper under California law that Petitioner be charged with theft and burglary.[2] This reasonable determination by the state court binds this court. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Furthermore, the attempted theft charge gave Petitioner a chance to be convicted of a misdemeanor thereby avoiding a twenty-five years to life sentence. Since this charge was later dismissed it is irrelevant to Petitioner's claim. The jury acquitted Petitioner of burglary and accordingly it too is irrelevant. Petitioner's actions meet the definition of petty theft and he fails to show that the Superior Court's finding was objectively unreasonable.

Petitioner asserts that trial counsel should have used the contents of a police report to attempt impeachment of the store clerk (including the clerk's allegedly conflicting testimony regarding how close Petitioner was to the door of the store when he was confronted by the clerk) (Ct. Rec. 14, p. 77). The Petition fails to show that the Superior Court's finding was objectively unreasonable. In fact, trial counsel's tactic of choosing not to attempt to impeach the witness may have been informed by the fact that the conflicting portion of the police report was inadmissible hearsay. *See* Cal. Evid. Code §1200.

Petitioner also claims that trial counsel refused to locate and call as a witness and alleged accomplice, Dan Dillon, who was present during the theft (Ct. Rec. 14, p. 79). Trial counsel stated on the record that he made numerous attempts to find Dillon.

---

[2] As previously stated, the attempted petty theft count was dismissed (Ct. Rec. 14-3, p. 1-8). However, jurors could have found that Petitioner was guilty of attempted petty theft on the petty theft count. *See* Cal. Penal Code § 1159.

MEMORANDUM OPINION - 8

Petitioner fails to show that the Superior Court's implicit finding that trial counsel was credible was objectively unreasonable.

Petitioner also claims that trial counsel failed in his representation when he refused to argue that the arresting officer's charge controlled what Petitioner could later be charged with (Ct. Rec. 14, p. 81). It was not objectively unreasonable to find that presenting irrelevant (and potentially prejudicial [3]) testimony was an objectively reasonable determination by trial counsel.

Petitioner also claims that trial counsel failed in his representation when he did not object to the trial court allegedly leading witnesses (Ct. Rec. 14, p. 78). Reviewing the record, Petitioner appears to misunderstand a discussion that was held outside the view of the jury to ensure that prejudicial hearsay evidence contained in a police report would be excluded from testimony. Additionally, Petitioner refers to the trial judge asking the store clerk how she responded when Petitioner handed her the belt. Petitioner believes that the judge led the clerk to say that Petitioner did not give the belt back. The record shows that Petitioner is in error (Ct. Rec. 14-3, p. 49).

Petitioner additionally asserts that trial counsel failed in his representation when he did not object to jurors overhearing a sidebar conversation that referenced Petitioner's prior criminal record. Petitioner has been inconsistent on his characterization of this incident. In more recent filings, he has stated that the jury had to have heard this conversation (Ct. Rec. 14, p. 85), while during the trial Petitioner stated he was "pretty sure" the jurors had not heard it (Ct. Rec. 14-3, p. 1). Given Petitioner's conflicting statements and no evidence that the jury did hear the conversation, the Superior Court did not make an objectively unreasonable finding in rejecting this claim.

---

[3]Such a line of questioning would have exposed the jury to some of Petitioner's prior convictions as Petitioner's arresting charge was for attempted theft with priors.

MEMORANDUM OPINION - 9

Petitioner also argues that trial counsel improperly failed to object to the jury instructions that were "clearly erroneous" and "overly modified" (Ct. Rec. 14, p. 86). Specifically, Petitioner objects to CALJIC 6.00 Attempt Defined, which he argues was modified and did not specifically define "attempt." Ct. Rec. 14-2, p. 67. In fact, modification of this instruction was limited to the insertion of the words "petty theft." Regarding Petitioner's argument that it lacked definition, it is, as it is named, the attempt defined instruction and clearly defines an attempt as, "[1] a specific intent to commit the crime of petty theft, and [2] a direct but ineffectual act done toward its commission." *Id.* Petitioner additionally argues that a modified CALJIC 14.02 instruction was the incorrect instruction for the petty theft charge. Petitioner is in error. *See* the use note of CALJIC 14.02 naming petty theft specifically.

Petitioner claims that counsel failed in his representation by choosing the trial tactic of Petitioner not taking the stand. Petitioner now believes that "it would not be possible. . . to be found guilty of the lesser included offense without taking the stand" (Ct. Rec. 14, p. 84). Given Petitioner's criminal history it is objectively reasonable that counsel encouraged Petitioner not to take the stand. In sum, Petitioner's ineffective assistance of trial counsel claim should be **DENIED**.

Petitioner's ineffective assistance of appellate counsel claims are not clearly enumerated. Petitioner begins by declaring that appellate counsel did not view major portions of the record (Ct. Rec. 14, p. 43). Petitioner's sole evidence for this claim is that appellate counsel believed only two counts (petty theft, and commercial burglary) went before the jury. Petitioner is initially certain that this was incorrect, but later admits he is uncertain if count three (attempted petty theft) was dismissed and asks this court, "[d]o you know if I had a third count read to the jury?" (Ct. Rec. 14, p. 47). In fact, appellate counsel was correct. *See* fn 2. (*Supra*).

MEMORANDUM OPINION - 10

Petitioner also makes other generalized ineffective assistance claims that are without merit: (1) counsel "failed to deliver persuasive arguments," and (2) counsel was in fact arguing for the state. These arguments are without merit. Finally, Petitioner repeats his principal argument that appears throughout his motion: that he was convicted of a crime that by its elements was not a felony, but instead a misdemeanor (specifically attempted theft) and not a strikeable offense. Petitioner believes that counsel failed in her representation by not raising this erroneous point. For the reasons stated, *supra*, these claims should be **DENIED.**

In sum, Petitioner has failed to show that the state court failed to apply *Strickland* to the facts of his case in an objectively unreasonable manner. Accordingly, his ineffective assistance of appellate counsel claim should be **DENIED**.

**F. Erroneous and Vague Jury Instructions (Ground 4)**

Petitioner claims that the jury instructions were erroneous and vague. The Superior Court on habeas review found that Petitioner failed to raise this claim on appeal: "[t]he argument with regard to jury instructions could have been raised on appeal and therefore is not cognizable on habeas corpus" (Ct. Rec. 14, p. 10). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Generally, a petitioner in this instance is procedurally defaulted from presenting such a claim. The exception to this rule is the "cause and prejudice" standard, which requires a petitioner to "demonstrate cause for his state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim." *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000). Petitioner has failed to show cause and prejudice. Petitioner attempts to show cause by blaming appellate counsel (Ct. Rec. 21, p. 20). However, "ineffective assistance adequate to establish cause for the procedural default of some *other*

MEMORANDUM OPINION - 11

constitutional claim is *itself* an independent constitutional claim." *Id.* (emphasis in original). In the present case, Petitioner's ineffective assistance of appellate counsel claim fails and consequently so does his claim regarding instructions. Accordingly, this claim should be **DENIED**.

**G. Cruel and Unusual Punishment (Ground 8)**

Petitioner argues that his sentence of twenty-five years to life is cruel and unusual punishment in violation of the Eighth Amendment. The California Court of Appeal rejected this argument:

> We reject defendant's assertion that the sentence is disproportionate to the nature of the offense and the offender. Defendant, age 38 at the time of the sentencing, had a record which included no only his four strikes for two robberies, rape by force or fear, and first degree burglary, but also additional convictions for first degree burglary, second degree burglary, and being a prisoner in possession of a weapon. Since becoming an adult, defendant has never spent any significant amount of time out of custody.
> Defendant was made a ward of the court at the age of 17 for vandalism and unauthorized entry onto private property. Three months later, his wardship continued because of petty theft. In February 1984, he was committed to juvenile hall until he reached age 18 (a period of three days) for another petty theft. In December of the same year, he began his string of violent and serious felonies against for separate victims for which he was sentenced to 18 years in state prison. These crimes included the forcible rape of a 55-year old woman, two residential robberies and two burglaries, all involving older women. In 1986, he was sentenced to an additional two years for being a prisoner in possession of a weapon. When defendant was finally paroled in November 1997, he was arrested within a month and returned to prison. Defendant was released on parole six more times over the following three years and was arrested and returned within one to three months five more times. He was finally discharged on November 21, 2001, having served the statutory maximum in custody. This discharge was less than four months after his most recent release on parole. Within 17 months, he had committed his new offense....
> The federal Constitution does not require strict proportionality between a sentence and the crime for which it is imposed; "it forbids only extreme sentences that are "grossly disproportionate to the crime.'" (*Ewing v. California* (2003) 538 U.S. 11, 23 (plur. opn. of O'Connor, J.), quoting *Harmelin v. Michigan* (1991) 501 U.S. 957 (opn. of Kennedy, J.).) The "offense" to be weighed against the penalty under this test may include recidivist history. (*Ewing,* at pp. 28-29.)
> The United States Supreme Court recently rejected a federal constitutional challenge to a three strikes sentence for recidivist offender who shoplifted three golf clubs. (*See Ewing v. California, supra,* 538 U.S. 11.) Defendant's present offense is similar to Ewing's (although the price of

MEMORANDUM OPINION - 12

> the golf clubs at $399 each made Ewing's offense grand theft). (*Id.* at p. 18). And defendant's criminal history is more, not less, egregious than Ewing's, who had previously been convicted of three residential burglaries and a single robbery. (*Id.* at p. 18).

Ct. Rec. 14-2, p. 33-40. Similarly, the Superior Court on habeas review rejected this argument.

> The California "three-strikes" law is not unconstitutional [*Ewing v. California* (2003) 538 U.S. 11]. It does not require the "third strike" to be serious or violent, as petitioner contends. While there may be offenses so trivial that invocation of the provisions of the three-strikes law may amount to cruel and unusual punishment, the burden is on petitioner to clearly show the sentencing decision was irrational or arbitrary. "In the absence of such a showing, the trial court is presumed to have acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." [*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1071; *People v. Carmony* (2004) 33 Cal.4th 367, 376-377].

Ct. Rec. 14, p. 10. The Superior Court further discussed the reasonable concern of recidivism by considering Petitioner's record as set forth in the Court of Appeal's decision. The state court's rejection of Petitioner's cruel and unusual punishment was not objectively unreasonable. Accordingly, Petitioner's claim should be **DENIED**, and final judgment should be entered in favor of Respondent upon the determination of the certificate of appealability issue.

**III. Conclusion**

   An appeal of this Order may not be taken unless this court or a Circuit Justice issues a certificate of appealability, finding that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (West 2009). This requires a showing that "reasonable jurists would find the district Court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a claim is dismissed the Court must determine whether

> jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

MEMORANDUM OPINION - 13

*Slack*, 529 U.S. at 474. A certificate of appealability should not be granted unless both components, one directed at the underlying constitutional claims, and the second directed at the court's procedural holding, are satisfied. *Id.* The court may address either the constitutional or procedural issue first. *Id.* Based on the court's preceding analysis, the court concludes that Mr. Mathis has failed to make a substantial showing of a denial of a constitutional right . The court will allow Mr. Mathis to solely address whether jurists of reason would find it debatable whether this court was correct in any substantive or procedural ruling. Mr. Mathis is not to readdress the other substantive issues decided herein.

Before the entry of final judgment in this matter and in accordance wit the new Rule 11 concerning certificates of appealability, Mr. Mathis shall have until February 11, 2010 in which to address only the certificate of appealability issue. If that issue is not addressed by February 11, 2010, the court will direct the entry of judgment in accordance herewith and rejecting any certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED:**

1. Mr. Mathis' second amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Ct. Rec. 14) should be **DENIED** after the determination of the certificate of appealability issue. Mr. Mathis shall file any pleading he desires solely on the issue of the certificate of appealability on or before February 11, 2010.

2. The Clerk is directed to file this Memorandum Opinion and forward a copy to Mr. Mathis and counsel for the Respondent.

**DATED** this 11th day of January, 2010.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE